Good morning, your honors. My name is Ronald Dunn. I represent Dana Scuderi-Hunter. We're here on a straight-ahead application of constitutional law claims. The question is, did the district court get it wrong? I think the district court cited to the right cases and then bollocks up everything else about the rest of the decision. Court said that we have already been given the opportunity, we've already fully litigated our constitutional claims, that my client was terminated and subjected to lots of adverse employment actions because she testified in given my opportunity to try that claim and it's been decided against me. That's what the court held. There is no way that you can read the appellate division decision as holding that. It's just not possible. The third department said that it considered your other claims and found them to be unavailable. You're not arguing that retaliation was not raised in Article 78, are you? You're arguing that that sentence in the appellate division's decision refers to the arguments that we made that my client was not charged with retaliation and she was not, we didn't litigate the question of retaliation in the underlying discipline case. So I was arguing you can't uphold the decision, you can't uphold that decision here based on things that were there. In Article 78, you claimed that she was retaliated against. Yes, retaliated against because of her misconduct in court and the court ruled in my favor on that. Well, no, the court, I know you think that they ruled in your favor, but what they specifically said is that considering that the hearing officer's findings of disloyalty and misconduct are based in an insignificant part on petitioner's role in testifying at the aforementioned family court hearing, it is difficult to reconcile the board's declaration with the hearing officer's recommendation, other than to conclude that petitioner's role in that matter cannot serve as the basis for any finding of misconduct. And then went ahead and affirmed the other findings of misconduct and found that the dismissal was rational. Correct, so that brings us to- So, I mean, you might have won the battle, but you lost the war. We lost that part of the war. And therefore, there was a finding that your client was dismissed not for exercising her First Amendment rights, but for her other conduct. Correct, which- And therefore, Justice Parker versus Blauvelt in the New York Court of Appeals, looking at the exact same language and the objection with regard to the way the appellate division had resolved the complaint on a First Amendment issue also in the subsequent 1983 claim, the first of the New York Court of Appeals, that that language was sufficient for issue preclusion. Which brings me to the analysis under Mount Health- How is that different from Parker versus Blauvelt? Because that's not what the sentence refers to. Well, how do you know what the sentence refers to? No one knows what the sentence refers to. That's why you can't read the case that way. It says her remaining arguments. It covers everything she argued that they didn't specifically mention in their opinion. We won on that- Excuse me, excuse me. Judge Lynch did a very detailed decision, said the decision was rational, said that the decision couldn't be based on her activities in front of the family court because that was her responsibility to do, and then said, we've considered her remaining arguments, one of which was retaliation, was it not? It was. And so therefore, it fell within the language that says we've considered her remaining arguments and find them to be meritless. I don't think you can possibly read the appellate division sentence referring to that that way. Well, that's the position Mr. Parker took when he was- with the difficulties with the volunteer fire department in Blauvelt, and he lost. I understand that. This is a different case than that. Okay. The- this is a very different case than that. So can I ask you for collateral estoppel then? What would you- how much detail would you require a court to give in rejecting an argument? So we're focusing on this sentence at the end, and you're saying that's not specific enough. How specific does it have to be to consider and reject an argument? You have to at least tell me that that's the argument you're considering my- So if it had said- if it had said we've considered all arguments, including the First Amendment argument- Yes. And rejected- I'm out. That's it. I'm out. So remaining arguments, even though you made a First Amendment arguments, remaining arguments can't be interpreted to reference all the other arguments you made? In this case, since the court already held that those parts of my claims where I was arguing about the First Amendment, they never reached the First- they didn't necessarily reach the First Amendment claim. What they said was, is that you were right, and therefore the decision cannot be based on that. And if it were, implying that if it were, you would win. Correct. But they said that that's not the case. They said that there was other misconduct that was identified, and that apparently the board's resolution, which said we're not considering this, deciding it, was supported by substantial evidence. That brings us right to the Mount Healthy analysis. Well, wait a second. Whose law decides this issue of whether the language matters or not? New York law. Not federal law, right? Correct. All right. And so what case can you tell me differentiates Parker v. Ballville Volunteer Fire Department from this case? Give me your best case. I did that in my brief, whatever I've done in my brief, Your Honor. Okay. And you say, notwithstanding the stark similarity between Parker v. Ballville and this case, that Parker v. Ballville does not apply? Well, I don't think there is a stark similarity. I haven't sat on both. I sat on Parker v. Ballville at the New York Court of Appeals, and I find it to be somewhat similar. Well, Your Honor, when you look at a, I'm sure that you sat on hundreds of Section 75 cases during your tenure as a New York State judge, and they come up on uniquely factual circumstances. And in this particular case, unique factual circumstances, we've got harassment claims over here that have nothing to do with the First Amendment activity. And then we've got the trial. This litigation was all about the trial. That's what the discipline case was all about. We didn't have a trial about harassment claims. In fact, we weren't even charged with that. She wasn't charged with that. That was not what the trial was about. And that's what she argued in the Article 78, right? Correct. And that's what that one sentence refers to. My other arguments referring to that, we're rejecting. Fine. That's fine. So I'm okay with that analysis of, I think they got it wrong, but I'm okay with that. I understand that. The court cut and paste pieces of the county's brief on that piece. They just didn't get that far. And I even understand why the record in this case is massive. You know, it's almost 3,000 pages of testimony. And they said that she was charged with harassment. She wasn't. They said that they proved harassment. She wasn't. They didn't. That's not what the case was about. So on those unique figures- But you are confronted with an Appellate Division decision saying that substantial evidence supported the conclusion of her termination, independent of any claims that she had with regard to her constitutional rights. Well, that's what a Mount Healthy case is. Once we get past issue- Why don't you answer my question? You do, you are confronted with the fact that the Appellate Division affirmed and said there was substantial evidence for which she could be terminated, independent of and not dependent on the First Amendment claims. Well, I got to tell you, that certainly didn't come up in the oral argument. And in the brief- Why don't you just answer my question? Well, I argued that they should not, that there was no proof of that. I did argue that. All right, fair enough. Thank you, counsel. Thank you, Your Honor. You are reserved a couple minutes for rebuttal. Good morning, Your Honors. Thank you so much for allowing us to be heard today. First and foremost, I must comment. Maybe it is my youthful naivety, but I firmly do not understand appellant's reading of the Appellate Division case. It does not seem to jive with reality. It does not seem to jive with the record. It does not seem to jive with what the Appellate Division actually held. And it seems to focus on an intentionally myopic reading of a single sentence out of an entire decision, while ignoring the charges that Scuderi-Hunter was brought up on, while ignoring the entire appendix that has been submitted to this court, and simply trying to hammer home on a single sentence. In actuality, Ms. Scuderi-Hunter was charged with seven things. She was found guilty of the preponderance of them. She was charged with a number of instances of misconduct, ranging from retaliation and harassment to failing to return county property. The Department did not say anything. It specifically excluded the retaliation allegations from its conclusion of holding the termination, right? I'm sorry, could you repeat the first part of that question? I thought the third department excluded the retaliation portion of her allegations of the arguments in upholding the termination. It was for other reasons, in other words. Maybe I was unclear. The hearing officer did uphold the fact that Scuderi-Hunter subjected her own employees to retaliation and harassment through the charges that were brought against her. So the- Yeah, but that's not her claim here. No, but my point, Your Honor, was that those are all things that she was independently found to have committed as misconduct by the hearing officer and upheld by the appellate division, notwithstanding any family court testimony. Now, as opposing counsel pointed out, there was a nine-day hearing here. That hearing focused on all seven of the charges. The hearing went for five days, I believe, in September, and another four days in late October. So the record here encompassed a number of issues separate and aside from the family court testimony that the appellate division was able to review and find sufficient for her penalty of termination. And the finding by the appellate division was specific in that regard, that the record was reviewed, that notwithstanding her contentions and notwithstanding their nullification of a few specifications, I believe over 100 specifications were upheld, and those specifications served as completely sufficient reason for the penalty of termination under these circumstances. So that is the gravamen of defendant's opposition to this appeal, that notwithstanding, even whether opposing counsel is correct, which we do not concede that he is regarding the family court testimony, it does not matter because a binding decision by the appellate division has been made opposing counsel. So we're setting aside the comparability to the Parker case and the sort of catch-all language that she used. We're setting that aside. And we're just, this argument that you're focusing on is there's sufficient evidence as to misconduct. Therefore, that precludes the First Amendment claim here, that the mouth, not healthy. Absolutely, Judge. Isn't there a difference between there being evidence in the record to support termination and a determination of what motivated the termination? I believe that there is, and I believe that's where the appellate division's decision comes in. The appellate division could not find that a termination was rational if there was a motivation of retaliation as the sole motivator. Had she not raised the retaliation claim in the article 78, there'd be no preclusive effect, would there? Not for this, correct, Judge, not for this particular claim before this particular court. Because the rationality is dependent upon the absence of, well, the appellate division decision, one has to determine whether that made a rationality determination based upon, in light of the fact that she was arguing retaliation, and she clearly argued retaliation at the appellate division, correct? Correct, Judge. Specifically, off the top of my head, appellant argued retaliation word for word on, I believe, page 38 of her brief to the appellate division. She then proceeded to give two or three pages of analysis regarding why she believes that the termination was motivated by retaliation. And there is legion of case law, including Parker, as Your Honor suggested, that discusses the wording used by the appellate division here in finding plaintiff's remaining contentions unavailing as sufficient to uphold a preclusive effect in this sort of instance. There is no reason that doesn't apply here, and there's also no reason that Mount Healthy does not apply here. I start with the Mount Healthy point because I think we can set aside some of those complications by understanding the fact that appellant's reading of the record is fictitious to a degree, and she certainly has been found to have committed a number of instances of misconduct that are sufficient for termination. Just to press on the catch-all language, which I think we've discussed is indistinguishable from what the court deemed sufficient in the Parker case. What if it hadn't included that catch-all language? What if it just denied or reached the conclusion it did without including the catch-all? Would there still be issue preclusion? Well, then I think, Your Honor, we're coming to some more esoteric and interesting points. I think there would be because I think that the overarching point made by Latino Officers Association and some other similar cases that a court cannot find that a termination is rational if it is based upon an impermissible consideration is an overarching consideration for an appellate division finding of this sort. The appellate division would simply be precluded from finding that the termination was rational if there was a sole motivation of impermissible retaliation on the county's part. In other words, it is my view that the state standard comports with Mount Healthy in that regard. And that is simply all I have on this one. Thank you, Your Honors. Thank you, Counsel. We'll hear about it. There's no mention of the district court decision. There's no mention of Parker v. Bolivial in their briefs. Can I be permitted to submit one page on this issue? Since obviously you find it to be important. That's fine. We'll give you a week to submit a page. Thank you very much. And I would point out that there's a second part to this test. And the second part to the test is was all of this unfair? Was I really given a fair chance to litigate the claim really anywhere? And that I'm pretty sure is going to be the distinguishing factor with the Parker v. Bolivial case. Not having it in front of me, I can't say for sure. What were you unable to do in litigating the claim? What were you prevented from doing? Well. What did you try to do that you weren't able to do? Well, I can't very well litigate a harassment claim if I'm not charged with it. She was not charged with harassing a co-worker. That was not a charge. She was not charged with retaliating against a co-worker. We didn't litigate that case. So in the appellate division, if the appellate division is referred, that sentence refers to that argument about we weren't charged with harassment. We weren't charged with retaliating against this employment. That's the only way that that sentence makes any sense in the appellate division decision. And in fact, they even do a footnote on that sentence and talk about our claim that two of the people who testified against her at the proceeding were actually participated in the decision to terminate her. And they gave a long discussion about that. You argued she was terminated based on her testimony. The case. That's all the case was about. That's how we litigated. Were you prevented in any way from litigating that question? No, I won on that question. That question, we never got to the constitutional issue because they necessarily decided the state statutory, for statutory reasons, we won on that claim. It was not ruled against me on that claim. That's why the only way this sentence makes sense is dealing with the things that I didn't win on. The things that I didn't win on was the retaliation and the harassment. That's the only way that sentence makes sense because I did win on the other one. You were right. You were right with regard to the fact that as the commissioner of social services, she had a responsibility to the child. The child was her ward. And you're right about that. You won that. Right. The problem with your argument is that the court said if this were the reason, we would have to vacate. In essence, it said we would have to rule for you. The problem with it is is that it said that's not the ultimate. They don't conclude that. They conclude that your client's termination was, quote, rational. I understand. And New York law is quite clear in recognizing that if there's a discriminatory motive or a constitutionally discriminatory motive in a termination, that cannot be the basis for a rational decision. And so, therefore, you lost on that issue. So I didn't. I don't know how anyone sees it otherwise. OK, so that's that. We'll cover that in my one. I've heard you argue a number of times. And you're a great lawyer. I have a great deal of respect for you. But but I think you and I disagree about what happened  Fine. I'll deal with that in my report. I'm seeing your views on Parker v. Block. Thank you, Your Honor. Thank you, counsel. Thank you both. We'll take the case under advisory. Thank you.